OPINION
Anthony Tilley attempted to strike Megan McTighe on the head with an empty 22 oz. beer bottle by forcefully swinging it toward her head. Fortunately, Tilley missed. ("22 oz." refers to the capacity rather than the weight of the bottle).
Tilley was charged with felonious assault, in violation of R.C.2903.11(A)(2). After a trial by jury, Tilley was convicted as charged and sentenced to two years imprisonment.
On appeal, he advances error as follows:
 "THE TRIAL COURT ERRED BY ALLOWING AN UNQUALIFIED EXPERT TO TESTIFY THAT A BEER BOTTLE IS A DEADLY WEAPON."
In order to prove the charge against Tilley, the State was required to demonstrate that he attempted to cause physical harm to McTighe "by means of a deadly weapon." R.C. 2923.11(A)(2). "Deadly weapon" is defined in part as "any instrument, device, or thing capable of inflicting death and . . . possessed, carried, or used as a weapon." R.C. 2923.11(A). Thus, the State was required to establish that the empty 22 oz. beer bottle fit this definition of a deadly weapon.
The State presented Dr. Russell Uptegrove as its expert witness to establish that the empty 22 oz. beer bottle, when used as a weapon, was capable of inflicting death. He was permitted to testify over the objection of defense counsel.
Dr. Uptegrove is a deputy coroner for Montgomery County. He is a medical doctor who has performed between 1200 and 1300 autopsies, approximately 250 of which involved blunt force trauma. Of those 250 blunt force trauma cases, approximately half — or 125 — involved blunt force trauma to the head as the cause of death. One of these cases involved a wine bottle and another involved a liquor bottle. Dr. Uptegrove has testified as an expert approximately 35 times. None of these cases wherein he testified involved bottles.
Dr. Uptegrove described three scenarios wherein blunt force trauma to the head can cause death.
"Q. And what is it that occurs to the head in terms of the trauma? What does that blunt force trauma do to cause death? Let's use, for example, the head area.
"A. Okay. There's several different scenarios which could lead to death. Number one would be if an object was a sufficiently heavy enough object, with enough force that striking an individual's head could cause massive skull fractures with subsequent brain hemorrhage which could lead to fairly rapid death.
"Another scenario could cause a blow to the head maybe not significant enough to actually fracture the skull but enough to cause a subdural hematoma or a bleed in the brain which could increase the pressure in the brain, therefore, driving the brain stem down in the foramen magnum which turns into the spinal cord where the cerebral edema and brain hemorrhage could cause someone to die from interfering with their central drive to breathe.
"Another possibility would be that a significant scalp laceration could be imparted without any significant skull fracture or maybe even any actual brain injury, but a person could exsanguinate, or bleed to death, due to a severe scalp laceration."
Dr. Uptegrove testified that he was familiar with each of these scenarios from autopsies he had performed.
Dr. Uptegrove was shown the empty 22 oz. beer bottle and asked, within a reasonable degree of medical certainty, whether, if swung downward with force toward someone's head, it was capable of inflicting death. Dr. Uptegrove's opinion was that the empty 22 oz. bottle was capable of inflicting death.
Evid.R. 702 provides:
 "A witness may testify as an expert if all of the following apply:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
Tilley's assignment of error is premised on the following assertion:
 "Dr. Uptegrove did not have the specialized knowledge, skill, and training or experience necessary to qualify as an expert in weapons. As a pathologist, he may be qualified to express opinions as to the cause of death and probably that `blunt force trauma' can cause death. But, Dr. Uptegrove lacked the necessary qualifications to give opinion testimony as to whether any certain item is a deadly weapon." (Emphasis ours).
On cross-examination, Dr. Uptegrove conceded that he had nevertestified as an expert in a blunt force trauma case involving a bottle; that he has not written any articles on blunt force trauma or presented at seminars on blunt force trauma; that he had no personal experience with the use of a beer bottle as a weapon or formal training in the subject; that he was not schooled in ceramic engineering; that he hadn't weighed the bottle, measured its thickness, or inspected it for imperfections; that he could not say exactly how much force would be necessary to cause a lethal injury, there being multiple variables.
In our judgment, the trial court properly permitted Dr. Uptegrove to testify and render the opinion that the empty 22 oz. beer bottle was capable of inflicting death. The State was not required to present an expert on weaponry but, rather, an expert to demonstrate that an empty 22 oz. beer bottle — obviously used as a weapon — was capable of inflicting death. Dr. Uptegrove was capable of rendering an opinion to that effect. His cross-examination testimony went to the weight to be accorded his opinion, but did not undermine his qualifications to render an opinion.
We agree with Tilley that Dr. Uptegrove should have been qualified outside the presence of the jury — Evid.R. 104(C) — but the error in permitting the qualification to be conducted in the presence of the jury was harmless in this case, given the correctness of permitting Dr. Uptegrove to testify as an expert.
Finally, there was no error in failing to grant Tilley's motion for judgment of acquittal given Dr. Uptegrove's properly admitted opinion testimony.
The assignment of error is overruled.
The judgment will be affirmed.
BROGAN, J. and GRADY, J., concur.